LENORE ULRIC, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48973, 53431. Promulgated January 31, 1933.

*Meyer Kurz, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

## OPINION.

SEAWELL: Entertainment to be a business expense and allowable as a deduction from gross income should have some definite, reasonable purpose connected with the business in hand and tending to its aid (*Thomas Shoe Co.*, 1 B. T. A. 124), and be of a nature reasonably calculated to accomplish the end sought. Entertainment expense of this kind has been allowed as such deduction, *Indiana Harbor Belt Ry. Co.*, 16 B. T. A. 279; *Edward A. Miller*, 20 B. T. A. 379; *A. F. Rees*, 21 B. T. A. 698; *Eitingon-Schild Co.*, 21 B. T. A. 1163. Where the expense is not incurred in the exercise of prudent business judgment and the business benefits are not direct and reason-

ably to be expected, such deductions are held not allowable. *Climax Spinning Co.*, 8 B. T. A. 970, and *National Yarn Mills*, 10 B. T. A. 1102. If no definite line of demarcation exists, then it would seem "the rule of reason" should apply. (*United States* v. *American Tobacco Co.*, 221 U. S. 106, 180.)

When giving her testimony on the hearing in this proceeding petitioner was asked by her counsel what business benefit she sought to derive from these expenses for entertainment, and replied: "It was my idea to establish a contact, to have people with me, because our profession makes it necessary for us to know people personally and to know their emotional reactions and their angles on our business, our profession which is built of emotions, and in order to have them understand from our angle, our idea of a play. * * * if you are selecting a cast, it is necessary to find out their viewpoint, their reaction, their angle on a certain character, * * * whether it is an author, a newspaper man, a man who writes special stories, special features to be given to the public, it is practically the same thing. It is necessary to establish a contact in order to understand the right interpretation of a play or the role or various roles in the play."

When she was asked the "specific value" from a business point of view of maintaining contacts with prominent and successful authors, her reply was: "Well, in order to give them ideas, * * * if the author finds the general idea interesting, he writes a character or a play for this particular star. * * * A successful play may come of it, and a successful play may not come of it. It is an experiment, you see." Similarly, as to "critics," unless they have the "viewpoint" of the actress they may give to the public their own unaided impressions; as to "feature writers," they should know the kind of "sports" the actress likes and her "hobbies" so that this information may be conveyed to the public in their writings, if any; as to "directors," "it is the same idea as it would be with an author"; and as to a manager, he "is also another angle." There was no testimony to fit the entertainment, expense for which is here under investigation, to the general purposes of entertainments mentioned in the petitioner's evidence. Nowhere in the evidence were we shown that during the years 1927 or 1928 petitioner made contact by means of entertainment with an author to give him her ideas or to discuss details of a play to be written for her by him; or that she was engaged in selecting a cast for any play, making necessary contact with other actors or actresses. The general purposes of the entertainment provided by her during the taxable years appear not only remote in their relation to her business, but of a character not reasonably to be expected to benefit the business. There

was no more than a bare possibility of business benefit as disclosed by the evidence.

In *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, relied on by petitioner, the main controversy was as to traveling expenses and there were only two small items of " entertainment " involved. One was when Cohan, a theatrical producer, supplied coffee and sandwiches to a cast rehearsing his play in Chicago. The cast so. supplied were evidently in his employ. The other was when he entertained four or five critics and some city hall employees when promoting his play. In remanding the cause to the Board, the Circuit Court of Appeals made this entry: " The cause is remanded to make some allowance for the expenses of travel and the like; otherwise it is affirmed." In the instant case the petitioner's traveling expenses have been allowed and are not here involved; and also her expenses at hotels and for meals and tips for herself, her maid and her secretary have been allowed by the Commissioner as claimed by her.

Unfortunately, in this proceeding we were provided with no evidence as to the attendant circumstances of these entertainments, showing the amount or necessity of expense incurred. The nearest approach to such evidence was with reference to the entertainment in honor of the famous German producer, Max Reinhardt, in New York in 1927. This was an elaborate affair, with hired caterers, musicians, and decorators, and with cut flowers and automobiles for the use of more than a hundred guests. The cost is not mentioned or segregated from other similar expense claimed for the year. If the Board, in the performance of its duties, is required judicially to determine that claimed deductions do or do not fall within the scope of the statute, it must first know the facts in each particular instance and as to each item of the expense, in order to ascertain that it is or is not an ordinary and a necessary expense and such as has been incurred in carrying on the taxpayer's business. *Pacific Bone, Coal & Fertilizer Co.*, 10 B. T. A. 77. An expense out of all proportion to the business and larger than any possible direct benefit to be derived therefrom could hardly be adjudged an ordinary and necessary business expense in accordance with the provisions of the statute. To permit the petitioner or her witnesses to decide that the expenses are ordinary and necessary and incurred in carrying on her business is for the Board to abdicate its duty.

The same observations apply in this case with reference to theatre tickets. Not only the expense for that purpose, amounting to $1,956.86 in the month of February, 1927, alone, should be explained in detail, but every item, however small. Generalities do not supply the rigid individualistic requirements of the law. Donations of one's

stock in trade are not an ordinary method of increasing business; certainly the delegation of authority to others to make such donations would appear far removed from prevailing business practice; and if the donations of theatre tickets are claimed to be in the theatrical world an ordinary and necessary expense of business, it should be shown not in a general way, but in each instance in which the claim is made.

When the custom arose of entertaining other theatrical people by stars of the stage with complimentary tickets and dinners is not shown in the evidence. Legend tells us that Shakespeare died on his fifty-second birthday (April 23, 1616), and that his death was hastened, if not caused, by partaking of hospitality supplied by himself in entertaining his friends, Ben Jonson and another poet. The potency of donated favors, especially of food, in securing adherents is recognized. Francis Marion held together his dispirited troops by adding to their love of home and country some ash-baked sweet potatoes. Cannibals have been turned from a hostile to a friendly attitude by a cup of salt. Arabs, it is said, will not attack those with whom they have broken bread. Men, women and children have always been willing to follow a leader who can provide food in a desert place, if for no other reason than because of the loaves and fishes.

Friends are of great assistance to petitioner; but so they are to all others in whatever business they may be engaged. But they can not be purchased in a business way, even indirectly. Every expense from which some incidental business advantage may flow is not a business expense under the statute; and every business expense is not necessarily an " ordinary " expense, and even when it is such it may not be " necessary." There may be court suggestion that the word " and " which connects the words " ordinary " and " necessary " in the statute here involved (section 214 (a) of the Revenue Act of 1926) should be given the meaning of " or," but we prefer to leave the statute as enacted by Congress. Even though the word " ordinary " might be considered as synonymous with " customary " (with which we do not agree), and even though it be admitted that it is customary for some stars to entertain as petitioner claims to have done, such entertainment has not been shown in this proceeding to have been reasonable in amount or extent, or necessary in fact to any extent. David Belasco, petitioner's manager, and one most eminent in the theatrical profession, according to the evidence of the petitioner herself, never entertained; and other actors and actresses, including stars, follow Mr. Belasco in this practice without, it appears, diminution of income or prestige.

Considering that there have been allowed as deductions to petitioner all her advertising expenses and all her other expenses con-

nected directly and reasonably with the prosecution of her business as an actress, as hereinbefore and in our findings of fact pointed out, we must hold that the respondent was not in error in his determination of the deficiencies herein.

*Judgment will be entered for the respondent.*